UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Sonie Tomlin,<br><br>*Plaintiff*,<br><br>SOUTHWEST AIRLINES CO., and TRANSPORT WORKERS UNION of AMERICA, AFL-CIO, Local 556 | Civil Action No. _____<br>Jury Demanded |

**COMPLAINT**

COMES NOW Sonie Tomlin, and complains of Southwest Airlines Co. (hereinafter Southwest), and Transport Workers Union of America, AFL-CIO, Local 556 (hereinafter TWU) as follows:

**NATURE OF THE CASE**

1. Tomlin brings this hybrid breach of the duty of fair representation case, against her employer, Southwest, and her union, TWU, pursuant to the Railway Labor Act, 45 U.S.C. § 151 *et seq.* Southwest violated the collective bargaining agreement and terminated Plaintiff based on her age and race and along the way, TWU failed to provide adequate representation throughout the grievance process by appointing a union representative, namely Sherilyn Gerhardt, who was incompetent to handle matters like the one Plaintiff faced. In fact, Plaintiff's case was the first case of this type she had been asked to handle. She even admitted to Plaintiff that she "…did not feel comfortable representing (you) a 30-year flight attendant on issues involving (attendance) points." Plaintiff is a black female and was 53 years old at the time of

her discharge. She had been a flight attendant for 32 years for Southwest at the time of her discharge.

## PARTIES

2. Sonie Tomlin is a citizen and resident of Missouri City, Texas, Fort Bend County. She was a flight attendant employed by Southwest for 32 years. During all of the events at issue in this Complaint, Tomlin was based in Houston, Texas.

3. Southwest Airlines Co. is a publicly held Texas corporation. Southwest is a "common carrier by air engaged in interstate . . . commerce" under 45 U.S.C. § 181. Southwest is therefore subject to the Railway Labor Act, 45 U.S.C. § 151 *et seq.* Southwest is headquartered in Dallas, Texas. Southwest may be served through its registered agent, Corporation Services Company d/b/a CSC — Incorporating Service Company, 701 Brazos Street, Austin, Texas 78701.

4. Transport Workers Union of America, AFL-CIO, Local 556 is a union and the certified collective bargaining representative for all Southwest flight attendants. TWU maintains local labor offices. TWU may be served through its registered agent, Tiffany Good, 1201 Airport Fwy, Suite 386, Euless, TX 76040-4171.

## JURISDICTION and VENUE

5. Subject-matter jurisdiction exists under 28 U.S.C. § 1331 because this action arises under the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, and under 28 U.S.C. § 1332 and because the parties are of diverse citizenship and more than $75,000 is in controversy. Supplemental jurisdiction exists under 28 U.S.C. § 1367 over all claims over which it does not have original jurisdiction since all claims arise out of Southwest's and TWU's mistreatment of Tomlin.

6. Personal jurisdiction over Southwest exists because Southwest has offices in

Houston, Texas and conducts extensive administrative, flight, and maintenance operations at Hobby airport in Houston, Texas.

7.      Personal jurisdiction over TWU exists because TWU conducts extensive operations at Hobby airport in Houston, Texas, including maintaining a domicile there and representing union members there. Venue is proper in this district under 28 U.S.C. § 1391 and 29 U.S.C. § 185(c) ("district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members") because TWU acts for its members in Houston and because a substantial part of the acts giving rise to this action took place in the Houston greater metropolitan area.

## FACTUAL BACKGROUND

8.      Sonie Tomlin was hired as a flight attendant on August 13, 1987. For 32 years her employment remained unblemished and she received consequent raises and accolades. Over the course of 2017, Ms. Tomlin faced a myriad of personal issues related to her family. For example, Ms. Tomlin was going through a divorce and was the primary care giver for her mother who had a heart condition which required bypass surgery and was parenting a son who was experiencing difficulties because of the divorce. For financial reasons she had to relocate to take care of her mother who actually passed shortly after Sonie Tomlin's discharge. Ms. Tomlin would have clearly been eligible for FMLA had she received the proper counseling in that regard. Other Caucasian flight attendants received such counseling and were able to either avoid the attendance point issue or were reinstated after exceeding the termination level of points.

9.      Sonie Tomlin was a loyal faithful Southwest employee who had advanced in salary over her tenure but who could easily be replaced with a less expensive younger employee. In fact,

Sonie Tomlin experienced that very issue firsthand.

10. When Sonie Tomlin grieved her discharge, the Union appointed a representative that was wholly incompetent, by her own admission, to handle a case like Ms. Tomlin's. Despite Ms. Tomlin's objection, TWU refused to appoint an experienced union representative to speak on Ms Tomlin's behalf.

11. Southwest violated its CBA in a number of instances and deprived Ms. Tomlin of the due process required by the contract.

## SOUTHWEST'S VIOLATION OF THE COLLECTIVE BARGAINING AGREEMENT

12. On September 23, 2017, Flight Attendant Sonie Tomlin mistakenly set her alarm for 4:00 P.M. instead of 4:00 A.M. and missed her morning flight out of Houston airport. C-1. Ms. Tomlin's no-show that day moved her to 12.5 attendance points (1/2 point over the termination level). The Union stipulated she was at more than 12 points. The Company notified Ms. Tomlin she was at termination level. Assistant Base Manager Caren Eaton held a fact-finding meeting with Ms. Tomlin and a Union representative on September 29, 2017.

13. At the time of the fact-finding meeting, the Company's Attendance and Leave Department ("A & L") had not completed its review of Ms. Tomlin's attendance record.

14. Ms. Eaton admitted she did not review Ms. Tomlin's attendance calendars with her at the fact-finding meeting. When Ms. Tomlin asked if her record would be considered, Ms. Eaton said the record would be considered at the next level, referring to the grievance meeting after termination. She told her to expect termination unless A & L found an error in the attendance point calculation.

15. On October 2, 2017, Ms. Eaton sent a letter, advising that effective October 4, Ms. Tomlin would no longer be employed by the Company, and the Union filed the

Grievance. On October 24, the parties met for a grievance meeting, attended by Union Grievance Chair Becky Parker and Ms. Tomlin, among others. Ms. Sarah Hill represented the Company at the meeting along with Ms. Rachel Laudermilk. The Company denied the Grievance, and the Union moved it to arbitration. The parties stipulated the Grievance was properly before the Arbitrator, who conducted a hearing March 20, 2018.

16. The Company violated the CBA requirement that it dismiss Ms. Tomlin only for just cause. It violated Ms. Tomlin's right to an investigation consistent with due process before making the decision to fire her. The Company's decision-maker in this case had already reached her conclusion before conducting the complete investigation. At the fact-finding meeting, Ms. Eaton failed to investigate fully Ms. Tomlin's circumstances and to elicit from her and her Union representative her side of the story.

17. The CBA's article on attendance includes the statement, "Special circumstances shall be handled on an individual basis at the sole discretion of the Company." Pursuant to this provision, the Company has discretion to decide whether the circumstances confronting a flight attendant warrant reduction of the penalty in attendance cases. The Company's discretion, however, is not unlimited; it cannot exercise its discretion in bad faith or arbitrarily. *Department of the Anny,* 130 LA 336, 343 (Halter, 2012); *Ind. Convention Ctr. & Hoosier Dome,* 98 LA 713, 719 (Wolff, 1992).

18. As part of a good faith investigation in attendance cases, the Company must gather and consider evidence of the flight attendant's circumstances. *SWA & TWU 556 re M.A. Sturdevant* (Hoffman, 2010). The Company must gather the evidence and allow the flight attendant to make her or his case before the Company makes its decision. *Sturdevant; Kohl's Food Stores,* 117 LA 660, 671 (Wolff, 2002); *Shaeffer's Ambulance Service,* 104 LA 481, 486. Contrary to this obligation, both Ms. Eaton and Ms. Hill denied knowing of any requirement

that the Company gather evidence and consider special circumstances before making a termination decision. However, the Company well knows its obligation in this regard.

## SOUTHWEST IGNORED CLEAR REQUIREMENTS FOR ITS INVESTIGATION

19. The Company takes the position that termination is required when a flight attendant reaches 12 points.

20. Articles 19 and 31 say termination at 12 points is optional. The Company's agreement in the CBA to handle special circumstances "on an individual basis at the sole discretion of the Company" means the Company is obliged to gather evidence of all the circumstances and then weigh the circumstances in its decision. *Studevant* at 10. The burden is on the Company, not the flight attendant or the Union, to gather this evidence. *Id.*

To meet its due-process obligation, the Company's representative at the fact-finding meeting must review the flight attendant's point calendars "in depth" and "initiate searches that could amount to special circumstances." *Sturdevant* at 11, 15.

> It is well recognized that there may be those "special circumstances" that need to be considered before the decision is made final. And Southwest's way of learning about such circumstances is to afford every employee who is at the termination level of 12, a meeting. And that meeting is where the <u>manager examines the points history and any factors that played a part in the absences.</u>

   *Sturdevant* at 10-11.

21. In this case, the fact-finding meeting was fatally flawed. The Company did not ensure its decision was supported by sufficient evidence. Ms. Eaton did not even have Ms. Tomlin' attendance calendars at the meeting, much less review them with her to elicit and explore the circumstances.

Not having this documentation at the meeting meant that neither

>the grievant nor the Union had a fair opportunity to fully present their positions and facts. Due process at the least required the Company to have the attendance calendar at the meeting.

*Studevant* at 17.

22. This is a significant violation of due process. On occasion the Company looks at the facts of an individual employee's situation and treats them as "special circumstances" that warrant allowing the employee to keep her or his job. Plaintiff is aware of at least five cases of flight attendants at 12 points in which special circumstances were argued. In four of them, after the fact-finding meeting, the Company did not terminate the flight attendants but instead allowed them to continue working for Southwest. *Sturdevant* at 3, fn 1. The Union's Becky Parker, with 15 years' experience working on grievances, has seen numerous flight attendants who have continued to fly with more than 12 points, some of whom were never terminated by the Company.

23. The Company's decision-maker in this case was Caren Eaton. The evidence is clear she had made her decision to fire Ms. Tomlin before the fact-finding meeting. If Ms. Eaton had not already made her decision before the fact-finding, she would have brought the attendance calendars with her to the fact finding meeting. She would have explored the infractions and the circumstances surrounding them. She failed to do so. As a result, the Plaintiff was deprived of due process. Surely making a decision before completing the investigation and only going through the motions of conducting a fact-finding meeting is an egregious violation of just cause.

### AGE DISCRIMINATION UNDER
### THE ADEA AND THE TCHRA

24. Sonie Tomlin was fifty-two (52) years of age when Southwest terminated his employment.

25. Southwest is an "employer" within the meaning of 29 U.S.C. § 630(b) and TEX. LABOR CODE§ 21.002(8)

26. Although Sonie Tomlin's performance was impeccable, Southwest replaced her with a younger and less experienced employee.

27. Southwest does not claim it dismisses all flight attendants who reach twelve attendance points. Several examples exist where younger flight attendants and Caucasian flight attendants were allowed to remain employed when faced with the same 12 point infraction that Sonie Tomlin faced. Below is a chart that displays Southwest's true motivation. As is apparent, Southwest can hire a 26-year-old white flight attendant and dismiss Ms. Tomlin, with her 30 years of loyal tenure, and save SWA 2/3rd of the salary paid to Ms. Tomlin. Ms. Tomlin is being discriminated against based on her race and age and Southwest is being allowed to hire younger new employees who will work for 1/3rd of that which Southwest is required to pay Ms. Tomlin under the CBA.

1. Flight Attendants shall be compensated on the basis of standard trip pay as follows. For purposes of this Article, the "New Contract Date" shall be November 1, 2016.

**PAY RATES**

The "Steps" described below refer to the pay level held by the Flight Attendant as of the New Contract Date. Thereafter, each Flight Attendant shall move up one Step on her/his Anniversary Date, in the manner described in Article 21, Section 14. Flight Attendants in their first or second six months on the New Contract Date, and those hired thereafter, shall move to Step 1 at the completion of one year of employment with the Company, and will thereafter move up one Step on her/his employment anniversary date, in the manner described in this Article.

| Pay Rate | Current | 11/01/16 | 11/01/17 | 11/01/18 |
|---|---|---|---|---|
| 1st 6 Months | $22.36 | $23.70 | $24.41 | $25.14 |
| 2nd 6 Months | $22.64 | $24.00 | $24.72 | $25.46 |
| Step 1 | $24.82 | $26.31 | $27.10 | $27.91 |
| Step 2 | $26.61 | $28.21 | $29.06 | $29.93 |
| Step 3 | $28.78 | $30.51 | $31.43 | $32.37 |
| Step 4 | $31.13 | $33.00 | $33.99 | $35.01 |
| Step 5 | $35.50 | $37.63 | $38.76 | $39.92 |
| Step 6 | $37.52 | $39.77 | $40.96 | $42.19 |
| Step 7 | $39.43 | $41.80 | $43.05 | $44.34 |
| Step 8 | $41.77 | $44.28 | $45.61 | $46.98 |
| Step 9 | $44.22 | $46.87 | $48.28 | $49.73 |
| Step 10 | $46.47 | $49.26 | $50.74 | $52.26 |
| Step 11 | $49.75 | $52.74 | $54.32 | $55.95 |
| Step 12 | $53.22 | $56.41 | $58.10 | $59.84 |
| Step 13 | $56.29 | $59.67 | $61.46 | $63.30 |

28. Sonie Tomlin filed a charge of age discrimination with the Equal Employment Opportunity Commission. The EEOC issued Sonie Tomlin a notice of right to sue on June 4, 2019, which Peterson received on June 17, 2019. She is filing this lawsuit within 90 days of receipt of that notice.

### RACE DISCRIMINATION IN VIOLATION OF § 1981

29. Plaintiff incorporates all of the foregoing paragraphs by reference as if fully set forth herein.

30. The foregoing actions of Defendants constitute discrimination against Plaintiff on the basis of her race in violation of 42 U.S.C. § 1981.

31. Section 1981 provides, among other things, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a).

32. Section 1981 defines "make and enforce contracts" to include "the making, *performance*, *modification*, and termination of contracts, *and the enjoyment of all benefits*,

*privileges, terms, and conditions of the contractual relationship.*" 42 U.S.C. § 1981(b) (emphases added). It specifically provides that the rights provided by § 1981 are "protected against impairment by nongovernmental discrimination." 42 U.S.C. § 1981(c).

33. Plaintiff, at all times relevant, was a party to a contract of employment with Southwest.

34. Pursuant to § 1981, Plaintiff was entitled to the same conditions of employment as her white counterparts.

35. Laura Vaughn is a white SWA flight attendant who was terminated with 15 points and wrote a letter to the company about the problems she was having with her boyfriend and got her job back at her exit meeting. Unlike Sonie Tomlin, she provided no corroborating evidence of her struggles, just that she was having boyfriend problems. The flight attendant was Chicago based at the time of her termination but is presently based in Houston.

36. Ann Matter was terminated for points but reinstated. Wendy Jones was given the option to retire or be terminated. Both are white female flight attendants.

37. Another white flight attendant was discharged because she carried a firearm through security, and had two DUI's. She was fired but reinstated.

## JURY TRIAL REQUEST

38. Plaintiff Requests a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Sonie Tomlin prays that Defendants be summoned to appear and answer, and that on final trial, judgment be granted against Defendants, awarding her the following:

a. Back pay, including but not limited to, lost wages and other employment

    benefits;

b. Reinstatement to place Sonie Tomlin in the position that she would have held but for Defendant's discriminatory treatment; and if such relief is infeasible, front pay;

c. Payment for the damages Sonie Tomlin suffered as a consequence of Defendants' breach of its contractual obligations;

d. Actual damages;

e. Compensatory and/or punitive damages, in the maximum amount allowed by law;

f. Liquidated damages in the maximum amount allowed by law;

g. Pre-judgment and post-judgment interest, in the maximum amount allowed by law;

h. Attorney's fees, expert fees, and costs of suit; and

i. Any further legal and equitable relief to which Sonie Tomlin may be justly entitled.

    Respectfully Submitted,

*Mike McCormick*

Mike McCormick
MCCORMICK & BOYD PLLC
Michael Y McCormick
Texas State Bar number 13461030
800 Town and Country Suite 300
Houston, TX 77024
Michael McCormick direct dial 713-254-0099
michael@mccormickandboyd.com
www.mccormickandboyd.com